**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL MIKLOS, | CIVIL ACTION NO. 12-3258 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| ADT SECURITY SERVICES, | |
| Defendant. | |

**COOPER, District Judge**

The plaintiff, Paul Miklos, commenced this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), against the defendant, ADT Security Services ("ADT"). (See dkt. entry no. 1, Notice of Removal, Ex. A, Compl.) ADT now moves for summary judgment in its favor, concerning the denial of Miklos's request for benefit payments under the ADT Security Services Pension Plan ("the Plan"). (See dkt. entry no. 6, Mot.) The Court must determine whether ADT acted in an arbitrary and capricious manner by denying Miklos's request for benefits.[1]

The Court has considered the Motion without oral argument. See L.Civ.R. 78.1(b). For the reasons that follow, the Court will

---

[1] ADT also raises a defense under the equitable doctrine of laches. (See dkt. entry no. 6-1, Br. in Supp. of Mot. for Summ. J. at 1 ("Def. Br.").) Because the Court has determined that the denial was not arbitrary or capricious, this equitable defense is rendered moot and the Court does not address it.

grant the Motion, as the Court has determined that ADT did not act in an arbitrary and capricious manner when it denied Miklos's request for benefits under the Plan.

## I.   Factual Findings

### A.   The Plan

The Plan was modified in 1976 after ERISA was enacted. (See dkt. entry no. 6-2, Def. Statement of Material Facts Not in Dispute at ¶¶ 2, 6-7 ("Def. Statement").) The pre-ERISA Plan includes three relevant definitions: (1) "Company" meaning "America District Telegraph Company and those controlled companies authorized by the Board of Directors to participate in the Plan"; (2) "Terms of Employment" meaning "continuous employment in the service of the Company or of the Company and its controlled companies"; and (3) "Employee" meaning any person who receives a "regular and stated compensation from the company other than a pension or retainer". (See dkt. entry no. 6-6, Certification of Mindy Ebert-Feldman, Ex. 3, Pre-ERISA Plan, at 1-2.) Further, the pre-ERISA Plan provides in Section 5 that participants receive pensions based on the attainment of a certain age in combination with the participant's "Term of Employment". (See id. at 3.)

The Summary Plan Description for the post-ERISA version of the Plan states, in relevant part that "[i]t is intended that this Plan

2

will apply to all eligible employees of ADT and its subsidiaries and affiliates, however, there may be special circumstances in which a subsidiary, affiliate or division of ADT has elected not to extend this Plan to certain of its employees". (Dkt. entry no. 8-3, Pl. Br. in Opp'n to Def. Mot. ("Pl. Opp'n Br."), Ex. C, Plan, at 4 ("ADT SPD").)

The Plan also provides for a plan administrator:

```
Plan Administrator
     The Plan is administered by the American District
Telegraph Company, One World Trade Center, 92nd Floor,
New York, New York, 10048 (telephone: (212) 558-1100)
through an Employee Benefits Committee appointed by its
Board of Directors.
     The Committee manages the day-to-day operation of
the Plan, arranges for retirements, authorizes all
benefit payments, and has the authority to interpret the
Plan and decide all questions concerning its
administration.
. . .
Payment of Benefits
     The Plan Administrator, as named above, pays the
benefits provided for under this Plan.
```

(ADT SPD at 17-18.) The Plan provides under the "Vested Benefits" section that if an employee should "leave the Company for any reason after . . . complet[ing] at least 10 years of Continuous Service . . . and before becoming eligible for retirement, [that employee is] vested." (Id. at 12.) The Plan notes that "[o]ne year of Continuous Service is credited for any calendar year in which you complete at least 1,000 Hours of Service, except the plan

year in which you are first employed or re-employed following a
Break-in-Service." (Id.)  The Plan also addresses those employees
employed before January 1, 1976, when this version of the Plan came
into effect: "If you were employed prior to January 1, 1976,
Continuous Service with respect to your service before that date
will be determined under the terms of the Prior Plan.  After
January 1, 1976, these rules apply." (Id. at 13.)  The Plan
contains a provision requiring mandatory distribution if the
present value of the participant's benefit is below a certain
amount. (See dkt. entry no. 6-4, Certification of Ebert-Feldman,
Ex. 1, Jan. 8, 2010 Letter, at 3.)

    With respect to claim and appeal procedures, the Plan
provides:

> Claim Appeal
>
> If an application for Plan benefits is denied in whole
> or in part, you or your beneficiary will receive written
> notification from the Employee Benefits Committee,
> including the reasons for denial.  You or your
> beneficiary may then submit a written request for
> reconsideration of your application to the Employee
> Benefits Committee within 60 days after receiving the
> denial.  Any such requests should be accompanied by
> documents or records in support of your appeal. You or
> your beneficiary will receive a final decision generally
> within 60 days after receipt of your appeal.  The
> Employee Benefits Committee has the exclusive right to
> interpret and administer the provisions of the Plan, so
> its decision is conclusive and binding.

(ADT SPD at 18.)

**B.   Miklos's Employment with ADT**

Miklos worked for ADT for periods of time from 1969 to 1980. (See Def. Statement at ¶¶ 1, 4; Pl. Opp'n Br. at 2-3, ¶ 2.)  During that time, ADT maintained the Plan, which was modified in 1976, after ERISA was enacted.  (See Def. Statement at ¶¶ 2, 6-7.)

Miklos originally contacted Aon Consulting with an application for ADT pension benefits in May 2009.  (See dkt. entry no. 6-8, Certification of Ebert-Feldman, Ex. 5, May 21, 2009 Letter at 2.) The letter included the following statement of Miklos's claim:

> I am sending you this letter and four pages of old pay stubs and tax statements that you requested.
> As per our conversations I worked for the A.D.T. Co. from approx. April 1969 to Oct. 1980.  As you can see on some of the tax statements I was covered by the pension plan offered at that time.
> I am now requesting my pension payments as I have vested rights (after ten years) in this system.

(Id.)

Aon Consulting determined that he was not a participant in the Plan and so informed Miklos via letter dated September 28, 2009. (See dkt. entry no. 6-9, Certification of Ebert-Feldman, Ex. 6, Sept. 28, 2009 Letter at 2.)  Aon Consulting referred Miklos to Tyco International Management Company Administrative Committee ("the Committee"), which serves as Plan Administrator for ADT. (See id.; see also Def. Statement at ¶¶ 11, 12, 18.)

Miklos then made a written request for review of his benefits claim under the Plan through his attorney on October 12, 2009. (<u>See</u> Certification of Ebert-Feldman at ¶¶ 3, 5-7.)  Along with his claim, Miklos provided his pay stubs from ADT during the years of 1973 to 1980, his Social Security Administration Itemized Statement of Earnings between 1969 and 1980, and a copy of a real estate tax stub from 1979.  (<u>See</u> <u>id.</u>)  These documents were reviewed by the Committee.  (<u>See</u> <u>id.</u> at ¶¶ 1, 2, 4, 10-12.)  The Committee denied the claim on January 8, 2010, via letter.  (<u>See</u> <u>id.</u> at ¶ 4.)  The claim was denied for failure to accrue ten years of vesting service under the Plan.  (<u>See</u> Def. Statement at ¶¶ 19, 20.)  The letter also informed Miklos that -- had he been a participant under the Plan -- his benefits would have been provided in a lump sum payout at the termination of his employment with ADT in 1980.  (<u>See</u> <u>id.</u> at ¶¶ 21-24.)

Miklos brought this action after receiving the denial, without making a written request for reconsideration to the Committee. (<u>See</u> <u>id.</u> at ¶¶ 25-28.)

## II. Legal Standards

### A. Summary Judgment Standard

The standard for a motion for summary judgment is well-settled and will be briefly summarized here.  Rule 56 provides that summary

6

judgment is proper if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  In making this determination, the Court must "view[] the record in the light most favorable to the non-moving party and draw[] all inferences in that party's favor."  United States ex rel. Josenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009); Nichols v. Verizon Commc'ns, Inc., 78 Fed.Appx. 209, 211 (3d Cir. 2003).

**B.   Applicable Standard of Review**

ERISA permits a plan participant or beneficiary to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  The Court, in reviewing ADT's denial of Miklos's request for benefits, "'sits more as an appellate tribunal than as a trial court.'"  Gibson v. Hartford Life & Accident Ins. Co., No. 06-3814, 2007 WL 1892486, at *5 (E.D. Pa. June 29, 2007) (quoting Leahy v. Raytheon Co., 315 F.3d 11, 17–18 (1st Cir. 2002)).  The Court must review the administrative record and determine, on the basis of that record, whether ADT's decision was arbitrary or capricious.  See Ford v. Unum Life Ins. Co. of Am., 351 Fed.Appx. 703, 707 (3d Cir. 2009).  Where the plan

administrator "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket," a conflict of interest exists, and "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008); see Firestone Tire & Rubber v. Bruch, 489 U.S. 101, 115 (1989); Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012).  An administrator's decision is arbitrary and capricious only if it is without reason, unsupported by substantial evidence, or erroneous as a matter of law.  See Fleisher, 679 F.3d at 121; Miller v. Am. Airlines, Inc., 632 F.3d 837, 845 (3d Cir. 2011); Nichols, 78 Fed.Appx. at 211.[2]

The scope of the Court's review is, accordingly, very narrow. See, e.g., Doroshow v. Hartford Life & Acc. Ins. Co., 574 F.3d 230, 234 (3d Cir. 2009).  A plan administrator who enjoys discretionary authority to resolve questions concerning a claimant's eligibility for benefits also enjoys the power and discretion to resolve factual disputes.  See Fleisher, 679 F.3d at 122; Nichols, 78 Fed.Appx. at 211-12.  When reviewing the administrator's decision, the Court may not substitute its judgment for that of such a plan administrator.  See Doroshow, 574 F.3d at 234; Nichols, 78

---

[2] "In the ERISA context, the arbitrary and capricious and abuse of discretion standards are essentially identical."  Miller, 632 F.3d at 845 n.2 (citation omitted).

Fed.Appx. at 211-12.  Instead, the Court must "defer to an administrator's findings of facts when they are supported by 'substantial evidence', which [is] 'defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  <u>Fleisher</u>, 679 F.3d at 121 (citation omitted); <u>see also</u> <u>Nichols</u>, 78 Fed.Appx. at 211.  Finally, the scope of Court's review is limited to the evidence that was before the Plan at the time of its final decision.  <u>See, e.g.</u>, <u>Fleisher</u>, 679 F.3d at 121.

The Court's conclusions under the arbitrary and capricious standard rest on the evaluation of several case-specific factors. <u>See</u> <u>Glenn</u>, 554 U.S. at 108; <u>Miller</u>, 632 F.3d at 855-56; <u>Loomis v. Life Ins. Co. of N. Am.</u>, No. 09-3616, 2011 WL 2473727, at *3 (E.D. Pa. June 21, 2011).  Here, those factors include: (1) ADT's interpretation of certain Plan terms; (2) ADT's consideration of all relevant documents relating to the period of Miklos's employment and calculation of a hypothetical benefit; and (3) the conflict of interest inherent in ADT's role as a plan administrator that both funds and evaluates claims.  <u>See</u> <u>Miller</u>, 632 F.3d at 845-48, 853-56; <u>Doroshow</u>, 574 F.3d at 233-34.

The Plan, as dictated by its terms, is administered by ADT through its appointed Employee Benefits Committee, which holds the "authority to interpret the Plan and decide all questions

9

concerning its administration." (See ADT SPD at 17-18.) The Plan
Administrator also pays out benefits owed under the Plan. (See
id.) Accordingly, the Court will review the Committee's
determination that no benefit is owed for an abuse of discretion,
considering the conflict of interest as one of the factors to be
weighed.

**III. Legal Standards Applied Here**

ADT moves for summary judgment on the contract claims because
it argues that those claims are preempted by ERISA. (See Def. Br.
at 1.) With respect to Miklos's claim for benefits under the Plan,
ADT raises the defense of failure to exhaust administrative
remedies and the substantive argument that the Committee's decision
was correct and reasonably supported by the facts. (See id.) The
Court will address preemption before considering the denial of the
claim for benefits under ERISA.

**A.   Preemption and Breach of Contract Claims**

ADT argues that Miklos's breach of contract claims are
preempted by ERISA. (See Def. Br. at 7.) Relying on Section
514(a) of ERISA, 29 U.S.C. § 1144(a), ADT argues that the federal
statute preempts state law claims like those Miklos alleged in the
Complaint, to the extent such claims relate to employee benefit
plans covered by ERISA. (See id.) ADT argues the breach of

10

contract claims Miklos raises merely seek benefits from an ERISA-governed pension plan, and any state law claims are therefore preempted.  (See Def. Br. at 7.)

Miklos briefly addresses preemption in his letter brief: "Plaintiff concedes that his claim are [sic] governed by both breach of contract and ERIA [sic]."  (See Pl. Opp'n Br. at 4.)  The Court notes that this fails to meaningfully concede that the state law breach of contract claims are preempted by ERISA.  In response to this concession, ADT argues that ERISA preempts both of the alleged breach of contract claims because Miklos only seeks "benefits that he asserts were wrongly denied. Any state law claim relating to Plaintiff's claims for benefits lies within the scope of ERISA's provisions governing claims and is completely preempted by ERISA.  Thus, Plaintiff's 'breach of contract' claim is preempted."  (See dkt. entry no. 9, Def. Reply Br. in Supp. of the Mot. at 1 ("Def. Reply Br.").)

ERISA works as a comprehensive, uniform act with respect to employee benefit packages and it contains broad preemption provisions.  See 29 U.S.C. § 1144(a).  To promote the development of a uniform body of law governing employee benefit plans, Congress wrote an expansive preemption provision into ERISA.  See, e.g., Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981);

Aetna Health, Inc. v. Davila, 542 U.S. 200, 208 (2004).  Where, as
here, a plaintiff "bring[s] suit only to rectify a wrongful denial
of benefits promised under ERISA-regulated plans, and do[es] not
attempt to remedy any violation of a legal duty independent of
ERISA", the state law claims fall within the scope of ERISA's
provisions, and are completely preempted.  See Aetna Health, 542
U.S. at 214.  State law, whether statutory or derived from cases,
is preempted where it conflicts with the federal provisions.  See
Alessi, 451 U.S. at 522–25; Aetna Health, 542 U.S. at 214–15.

The breach of contract claims allege damages based on ADT's
failure to pay Miklos's pension.  (See Compl. at Count I, ¶¶ 1–6.)
ERISA provides the exclusive remedy for wrongful denial of benefits
under ERISA-regulated pension plans.  See Aetna Health, 542 U.S. at
221 (holding that the statute completely preempts state law
wrongful denial of benefits claims that involve "pure eligibility
decisions").  "[A]ny state-law cause of action that duplicates,
supplements, or supplants the ERISA civil enforcement remedy
conflicts with the clear congressional intent to make the ERISA
remedy exclusive and is therefore pre-empted."  Aetna Health, 542
U.S. at 209.  Thus, federal law here preempts Miklos's state law
contract claim.

**B.   Claim for Benefits under ERISA**

ADT argues that: (1) the failure to exhaust administrative remedies requires entry of judgment in ADT's favor, and (2) the Committee's findings were correct and reasonably supported by the facts.  (See Def. Br. at 9-11.)  Miklos opposes the Motion on the grounds that: (1) the failure to exhaust administrative remedies is not fatal because filing an administrative appeal was not mandatory, and (2) the Committee's findings were arbitrary and capricious because Miklos was 65 and had been employed by ADT for 10 years when he made his claim for the pension benefit.  (See Pl. Opp'n Br. at 4-5.)  The Court will address each of these arguments in turn.

**i.   Administrative Exhaustion**

ADT argues that the Plan required Miklos to appeal through the administrative process before bringing a lawsuit.  (See Def. Br. at 9.)  ADT relies on a case from the United States Court of Appeals for the Third Circuit, which establishes administrative exhaustion as a judicially-created affirmative defense.  See Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990).  Miklos responds briefly that "Under the ADT pension plan, See Exhibit C, Pension Plan booklet, page 18, Plaintiff 'may then submit a request for consideration.'  It was not mandatory under the language of the

13

plan." (Pl. Opp'n Br. at 4.) In reply, ADT notes that the requirement does not derive from the terms of the Plan, but from a judicially-created affirmative defense. (See Def. Reply Br. at 6.) ADT also argues that permissive language regarding the availability of reconsideration does not change the mandatory nature of the exhaustion requirement. (See id.)

When an employee or former employee challenges an administrator's decision to deny benefits, the Court first determines whether the employee exhausted administrative remedies before making an evaluation of whether the administrator's decision was arbitrary or capricious. See Wolf v. Nat'l Shopmen Pension Fund, 728 F.2d 182, 186–87 (3d Cir. 1984) (applying exhaustion principles before the arbitrary and capricious standard).

After a denial of a claim for benefits, here, the Plan permits an appeal that "may" be requested at the employee's option. (See ADT SPD at 18.) This permissive language signifies that once a claim is denied, the employee can either appeal the administrator's decision or accept the denial of benefits. Contrary to Miklos's argument, this language does not overrule judicial precedent by making a request for reconsideration a non-mandatory step. See Weldon, 896 F.2d at 800 (construing similar plan language to require administrative exhaustion prior to federal suit).

14

Nonetheless, Miklos has satisfied the administrative exhaustion requirement with respect to the claim he made upon attaining the age of 65.

Miklos made two written requests for his benefits from ADT. In his May 2009 letter, Miklos first submitted an application for benefits to Aon Consulting. (See May 21, 2009 Letter at 2.) After reviewing his materials, Aon Consulting determined that he was not a participant in the Plan and denied his claim via letter dated September 28, 2009. (See Sept. 28, 2009 Letter at 2.) Miklos subsequently again requested benefits under the Plan through his attorney on October 12, 2009. (See Certification of Ebert-Feldman at ¶¶ 3, 5-7.) The Committee denied the claim on January 8, 2010, via letter, for failure to accrue ten years of vesting service under the Plan. (See id. at ¶¶ 1, 2, 4, 10-12; Def. Statement at ¶¶ 19, 20.) The Plan requires that, after a participant or beneficiary is denied benefits, he or she must make a written request for reconsideration of the claim to the Committee before bringing his claim to the courts. (See ADT SPD at 18.) After the denial in the September 28, 2009 letter from Aon Consulting, Miklos fulfilled that exhaustion requirement with his October 12, 2009 letter to the Committee. Thus, the failure to exhaust administrative remedies provides no defense here.

### ii. Correctness of the Committee's Denial of Benefits

ADT argues that Miklos's records demonstrate the Committee was neither arbitrary nor capricious with respect to his denial of benefits. (See Def. Br. at 11-12.) Miklos argues that he worked for ADT "for at least (10) ten years and attained the age of 65" and is thus entitled to benefits. (See Pl. Opp'n Br. at 4.) The Court will examine the record to determine whether the Committee interpreted the terms of the Plan; what the Committee found with respect to Miklos's years of service; and whether the Committee's decision was supported by the record.

The Committee relied on several sections of the Plan, both in its pre-ERISA and post-ERISA forms. (See Jan. 8, 2010 Letter at 3.) Specifically, the Committee utilized definitions of "Company", "Terms of Employment", and "Employee" from the older version, as well as Section 5, which describes the requirements for receiving a pension. (See id.) The Committee also relied on several provisions in the post-ERISA summary plan description: which classes of employees are eligible for participation; the definitions for "Vesting" and "Continuous Service"; how to deal with service under the older Plan for employees employed prior to January 1, 1976; and mandatory distribution. (See id.)

According to the denial letter of January 8, 2010, the Committee found that Miklos failed to accrue ten years of continuous vesting service before he was terminated and thus could not participate in the Plan.  (See id.)  The Committee further determined that, even if he had accrued the necessary ten years, the value of his Plan benefit would have required a cash out distribution when he terminated his employment in 1980.  (See id.) The Committee relied on those documents Miklos provided when making its decision, as there were no records of Miklos participating in the Plan.  (See id.)  Miklos does not dispute these facts, or the Committee's determinations, with any facts demonstrating that he fulfilled the ten years of vesting service requirement or that he was in fact provided either a sufficient or insufficient lump sum payout in 1980.  (See Pl. Opp'n Br. at 2-3.)

Although Miklos explicitly states in his statement of facts that "Plaintiff Paul J. Miklos was an employee of [ADT] . . . for 10.5 years", this is not enough to defeat the Motion.  (Id. at 6.) The Court will "defer to an administrator's findings of facts when they are supported by 'substantial evidence', which [is] 'defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Fleisher, 679 F.3d at 121 (citation omitted).  Miklos must point to facts demonstrating that

he satisfied the vesting service requirement to be eligible to participate in the Plan.

The vesting service requirement, under the pre-ERISA Plan, requires "continuous employment in the service of the Company," with full-time employees characterized as those who worked for at least 35 hours per week.  (See Pre-ERISA Plan at 3.)  Under the current iteration, the Plan requires an employee to complete "at least 10 years of Continuous Service" before becoming a vested Plan participant, with "Continuous Service" defined as "any calendar year in which you complete at least 1,000 Hours of Service."  (ADT SPD at 12-13.)

The Court has examined the administrative record and the Committee's decision and rationale for the denial of benefits.  As reflected in the September 28, 2009 Letter, ADT had no record of Miklos in its database and determined that he either was not a participant of the Plan or did not have an earned benefit under the Plan.  (See Sept. 28, 2009 Letter at 1.)  Miklos bore the burden of proof to demonstrate otherwise.  (See id. at 2.)[3]  The Committee

---

[3] "The plan's records, including but not limited to any individual's employment status, compensation, service, elections, distributions, and all other matters affecting eligibility for and amount or payment of benefits, are controlling in all cases.  If a Claimant believes that the plan's records are incomplete or incorrect, the burden of proof is on such Claimant to provide written documentation of the additional information that the Claimant believes is correct."  (See Sept. 28, 2009 Letter at 2.)

18

reviewed the supplemental materials that Miklos submitted with his October 12, 2009 Letter and denied the claim on the basis that Miklos is not in the Plan's records and the "information [he provided did] not contradict or override the information in the Plan's records." (See Jan. 8, 2010 Letter at 1-3.) The Court will uphold the Committee's decision because it is not arbitrary or capricious.

The Committee gave two possible reasons for why Miklos does not have a Plan benefit: (1) he failed to accrue vesting service of at least ten years before leaving the company, or (2) any benefit owed was already distributed. (See id. at 3.) The first reason is supported by the evidence in the record. In 1972, Miklos's reported earnings from October to December dropped by almost 75% compared to the previous quarter. (See Oct. 12, 2009 Letter at 15.) Again in October to December of 1973, Miklos's earnings dropped to only 6% of what he earned during the previous quarter. (See id.) These two dips could signify breaks in service (which would destroy Miklos's ability to fulfill the ten years of Continuous Service required for Vested Benefits), or the decreases could indicate less, yet still continuous, work. Because a reasonable person could view such dips as breaks in service that destroyed the required Continuous Service, the Court finds that the Committee's

determination that Miklos had not worked for the required 10 years of vesting service is supported by "substantial evidence", meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Fleisher, 679 F.3d at 121 (citation omitted).

The Committee continued its analysis, determining that, even if Miklos had accrued 10 years and vested as a Participant, any benefit he was owed under the Plan would have been distributed in 1980. (See Jan. 8, 2010 Letter at 3.) The Plan specified that accounts below a specific threshold ($1,750 or $3,500 at the time of Miklos's termination) received automatic distribution upon that participant's termination of employment with ADT. (See Def. Br. at 12; Def. Reply Br. at 7; Jan. 8, 2010 Letter at 3.) "Had Plaintiff been eligible for a benefit, his benefit would have been distributed to him in a lump sum when he terminated employment with ADT--not in periodic payments at 65." (Def. Reply Br. at 7.) The January 8, 2010 letter from the Committee informed Miklos that -- had he been a participant under the Plan -- his benefits would have been provided in a lump sum payout at the termination of his employment with ADT in 1980. (See Jan. 8, 2010 Letter at 3; see also Def. Statement at ¶¶ 21-24.)

20

Miklos does not demonstrate that such findings go against the substantial weight of the evidence.  (See, e.g., Pl. Opp'n Br. at 4.)  As is reflected in the record, the Plan has no indication that Miklos's benefits were not so paid as the time for such an automatic distribution would be at the time of termination, here in 1980.  (See Jan. 8, 2010 Letter at 3.)  ADT further argues that a Plan participant would receive regular information and "Plan-related disclosures, including summary plan descriptions and summary annual reports", and that the failure to receive these documents or to present them to the Committee suggests that Miklos was never vested or should have been alerted to a problem with his benefits some time ago.  (See Def. Br. at 12.)  Miklos has presented neither evidence nor even argument that he received any such Plan information, or that ADT failed to provide him with a cash out distribution in 1980.

The Court has also considered the factor of the potential conflict of interest inherent in plan administrators controlling both the purse strings for a plan and the eligibility determination.  See Glenn, 554 U.S. at 108.  The Court has considered the manner in which Miklos's claim was processed, whether the Committee followed its own procedural requirements, the reasons underlying the Committee's decision, and whether the

21

structure of the Plan provided the Committee with a financial incentive to deny Miklos's claims.  See Loomis, 2011 WL 2473727, at *3.  Here, although ADT appoints the Committee, two separate companies, Tyco International Management Company and Aon Consulting, considered Miklos's claim and ultimately denied his benefits.  (See Sept. 28, 2009 Letter at 1; Jan. 8, 2010 Letter at 3.)  Both considered all the documents Miklos could muster to demonstrate eligibility for benefits and ultimately reached the same conclusion: his claim for benefits failed because he could not demonstrate that his interest had vested with ten years of Continuous Service.  (See Def. Statement at ¶¶ 11, 12, 18.)  The Committee reviewed all the documents both times, presented Miklos with an opportunity to supplement the record before the Committee with any further information supporting his claim, and gave Miklos a written explanation of why his claim was denied, pointing to specific provisions in the Plan.  (See Sept. 28, 2009 Letter at 2; Jan. 8, 2010 Letter at 3.)  Finally, the Plan is funded by ADT and administered by the Committee ADT appoints, but it does not provide any explicit bonus or other financial incentive to promote wrongful denial of appropriate benefits.  (See ADT SPD at 17-18.)  The Court thus determines that this factor does not militate in favor of

finding the Committee abused its discretion in denying Miklos's claim.

The Court accordingly finds that the decision to deny Miklos's request for benefits was supported by the substantial weight of the evidence and does not constitute an abuse of the Committee's discretion.

## CONCLUSION

For the reasons stated <u>supra</u>, the Court will grant ADT's motion for summary judgment.  The Court will issue an appropriate Order and Judgment.

       <u>    s/ Mary L. Cooper    </u>
       **MARY L. COOPER**
       United States District Judge

Dated: March 5, 2013